OPINION
{¶ 1} The defendant-appellant, Nicholas Amaya, appeals the October 21, 2003 judgment of the Common Pleas Court of Marion County, Ohio, sentencing him to six years of imprisonment for his conviction of robbery.
 {¶ 2} During the early morning hours of June 17, 2003, Sam Easterday was awakened by the sound of his dogs whining. Although he initially thought that they were responding to his step-son, Clayton, downstairs, he soon heard a noise outside his home. When he looked out the window, he saw a man, later identified as Jesse Salaz, in his yard with Clayton's stereo speakers in his hand Sam woke his wife and told her to call 9-1-1, which she did as he ran outside to confront Salaz.
 {¶ 3} Sam soon caught up to Salaz, who was now putting the speakers into a white car that was located around the corner from the Easterday home. He confronted Salaz about taking his belongings but was soon approached from behind by another man. As Sam turned to see who was behind him, he was hit on the hip. A fight then ensued between the three, resulting in Sam's lip being busted, three teeth loosened, and a deep bruise to his right hip. During this struggle, Sam noticed that the man behind him was wearing a gray sweatshirt. Sam then heard one of the men say to the other, "It's underneath the front seat, get it." Fearing that they were referring to a weapon, Sam retreated to his home to wait for the police.
 {¶ 4} By now, the Marion Police Department had been contacted and officers were on the way to the Easterday home. While en route, Officer David Troutman noticed a white car fail to yield to his police cruiser, which had its emergency lights activated at the time. Almost immediately, Officer Troutman realized that this car matched the description provided by the dispatcher of the one fleeing the Easterday home. Officer Troutman then activated his siren and attempted to stop the white car. The vehicle did not stop in response to the officer's lights and siren and a pursuit ensued. The white car eventually drove down a dead end street. The driver, later identified as Salaz, slammed on his brakes, and he and the male passenger in the car fled on foot. Officer Troutman exited his cruiser and chased the two men, who soon separated. Although the officer continued to pursue only Salaz, he was able to use his radio to inform other officers where he and the suspects were during the pursuit, including the direction the passenger had taken when he split from Salaz.
 {¶ 5} Officer Jeremy McCullough responded to the scene of the foot pursuit and was able to stop the second suspect, who was wearing a gray sweatshirt. The suspect then identified himself as Nicholas Amaya. After informing him of his Miranda rights, the police then questioned Amaya regarding his involvement with the incident at the Easterday home, and he provided three different versions of what transpired.
 {¶ 6} Initially, Amaya stated that he was at the home of his friend "Ed" on South Prospect Street, that his brother, Salaz, came and picked him up from there, and that before he knew it, the police were chasing them. However, upon further questioning, Amaya could not recall Ed's last name or what his address was and then provided a second version of events. In this version, Amaya stated that he was walking from Ed's home when he came upon his brother's car, which was parked. He then saw his brother carrying a pair of speakers, and his brother told him, "Get in the car. Let's go," which he did.
 {¶ 7} When Officer McCullough informed Amaya that he did not believe this version of events, Amaya proceeded to tell yet a third version. This time Amaya told the officer that he knew where his brother's car was parked, that he got in the vehicle although Salaz was not there, and that his brother soon approached the car carrying the speakers and yelling at him to look under the floor mat. Amaya further stated that he saw someone coming up behind his brother so he exited the car. He admitted that a struggle ensued between the three and that his brother "popped the guy in the mouth twice." He and Salaz then put the speakers in the car and left. As for him fleeing from the police, Amaya told them that he ran because he had a couple of warrants issued for him.
 {¶ 8} While the pursuit of Salaz and Amaya was in progress, other officers responded to the Easterday home. Upon investigation, the police discovered that several items had been taken from the home as well as from the car of Kristin Easterday, Sam's daughter, whose car was located in the garage. Among the items stolen from the home were a Play Station 2; two video games; two purses and the contents therein belonging to Nina Easterday, Sam's wife; and a stereo system, including a pair of speakers. In addition, the stereo in the dashboard of Kristin's car and her boyfriend's bookbag, which was in the trunk of her car, were stolen.
 {¶ 9} The police found all of the stolen items, with the exception of the Play Station 2, located in the white car driven by Salaz and occupied by Amaya upon searching it after Amaya's arrest. Although Salaz managed to escape from Officer Troutman during the foot chase, Sam Easterday identified Amaya as one of the men who assaulted him. At the time of this identification, Amaya was wearing the gray sweatshirt. In addition, Amaya told the police where Salaz could be found, and Salaz was subsequently apprehended.
 {¶ 10} Later that day, Nina Easterday, asked the police if she could retrieve her medication from one of her stolen purses. When she came to get this medicine, the police asked her to go through her purses to see if any items therein were missing. Immediately, Nina noticed that $28 had been taken from one of her purses. She specifically recalled that she had a $10 bill and eighteen $1 bills inside her purse because she was going to give some money to her son, Clayton. Upon his arrest, $28 was found on Amaya's person, including several $1 bills.
 {¶ 11} As a result of the investigation into the incident at the Easterday home, charges were filed against Amaya and Salaz. Amaya was charged with three counts: Aggravated Burglary, Robbery, and Failure to Comply with Order or Signal of a Police Officer. In addition, the State provided a bill of particulars during discovery that indicated its intent to possibly proceed upon a charge of complicity to aggravated burglary and robbery pursuant to R.C. 2923.03. Amaya pled not guilty to each offense, and a two-day jury trial was conducted on September 8-9, 2003.
 {¶ 12} During the trial, the State presented the testimony of nine witnesses, including the Easterday family and law enforcement officials who testified to the aforementioned facts. The State also introduced the items (and photos thereof) belonging to the Easterdays, which were found in the white car driven by Salaz. At the conclusion of the State's case, Amaya made a motion for acquittal pursuant to Crim.R. 29. This motion was denied as to the burglary and robbery counts but was granted as to the count for failure to comply. Amaya presented no evidence in his case-in-chief, rested, and renewed his Crim.R. 29 motion, which was again denied. Thereafter, the jury found Amaya not guilty of the burglary count but guilty on the robbery count. The trial court later sentenced him to six years in prison. This appeal followed, and Amaya now asserts two assignments of error.
The Conviction Was Against the Manifest Weight of theEvidence.
 The Evidence Was Insufficient to Convict the Appellant ofRobbery.
 {¶ 13} Before addressing these assignments of error, we note that App.R. 16(A)(7) requires that the brief of the appellant include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." In this case, whether Amaya's brief complies with this Rule is questionable. The brief contains two citations to case law, one for the standard for a manifest weight determination and one for the standard for sufficiency of the evidence. Yet, the brief does not apply these standards to the facts of this case or provide the reasons in support of his contentions. While we highly discourage this practice, we, nevertheless, elect to proceed to the merits of Amaya's appeal.
 {¶ 14} The Ohio Supreme Court has set forth a test to determine whether the evidence submitted in a trial was sufficient for the trier of fact to determine a crime had been proven beyond a reasonable doubt. See State v. Jenks (1991),61 Ohio St.3d 259. In Jenks, the Court outlined the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence admitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt.
Id. at paragraph two of the syllabus.
 {¶ 15} In contrast, when reviewing whether the verdict was against the manifest weight of the evidence, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), 3rd Dist. No. 5-97-31, unreported, 1999 WL 797144, citing State v. Martin (1983), 20 Ohio App.3d 172, 175; Statev. Thompkins (1997), 78 Ohio St.3d 380, 387. When making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch
(1987), 33 Ohio St.3d 19, 23-24, citing State v. Mattison
(1985), 23 Ohio App.3d 10, syllabus.
 {¶ 16} In the case sub judice, Amaya was convicted of robbery in violation of R.C. 2911.02(A)(2). This section states: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]" R.C. 2911.02(A)(2). Although the trial court instructed the jury as to this section, it further instructed the jury that Amaya could be convicted of robbery as an aider or abettor in accordance with R.C.2923.03(A)(2). Thus, the State had to prove beyond a reasonable doubt that Amaya, either as the principal offender or as an aider or abettor of Salaz, inflicted, attempted to inflict, or threatened to inflict physical harm on Sam Easterday in attempting or committing a theft offense or in fleeing immediately after the attempt or offense.
 {¶ 17} The evidence before the jury, as previously discussed, clearly established the occurrence of a theft offense by Salaz. In addition, given the circumstances, a permissible inference could be made that Amaya participated in this theft either as a principal offender by stealing from Kristin Easterday's car in the garage or in aiding Salaz with theft.[1] Further, Sam Easterday suffered physical harm at the hands of the two men by way of an injured lip, loosened teeth, and bruised hip as they were in the process of loading the items stolen from his home and attempting to flee from the scene. Although Sam could not identify Amaya at trial, he did identify him the day the crime occurred and at trial was able to identify the sweatshirt worn by the man who attacked him from behind. The same sweatshirt was also identified as the one Amaya was wearing at the time of his apprehension.
 {¶ 18} Sam also testified that Salaz was the man he saw carrying the speakers and that Salaz was in front of him at the time he was assaulted from behind by the second assailant. The only other person present during the struggle was Amaya. Thus, the jury could reasonably conclude that Amaya was the one who attacked Sam from behind. Lastly, Amaya's varying accounts of the events at the Easterday home could reasonably lead a jury to conclude that he was attempting to avoid punishment.
 {¶ 19} Given this evidence, construing it in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of robbery and/or complicity thereto proven beyond a reasonable doubt. Furthermore, in reviewing the record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, including Amaya's own statements to police, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, Amaya's conviction for robbery was not against the manifest weight of the evidence. Accordingly, the two assignments of error are overruled, and the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.
Judgment affirmed.
Cupp and Bryant, JJ., concur.
[1] The jury did not convict Amaya of burglary, which required proof that Amaya trespassed in an occupied structure. Thus, the jury must not have believed beyond a reasonable doubt that Amaya was in the Easterday home. However, the garage was detached from the home and any entrance into it would not constitute a trespass in an "occupied structure" as that term is defined in R.C.2911.11(C)(1) and R.C. 2909.01(C).